1T CANNIZZARO, J.,
concurs with reasons.
I concur in the majority opinion. I am writing separately, however, to emphasize the very disturbing facts in this case.
According to the initial ruling of the Civil Service Commission in this matter, Mr. Carroll stepped on a nail while performing his duties as a police officer. Because he had been involved in a work-related accident, he was required to submit to a test for illegal drugs when he was treated for his injury at the Tulane University Medical Center emergency room. Mr. Carroll furnished a urine sample for the drug test, but the sample was not sealed in his presence. Additionally, there was no evidence that the procedures required to insure the integrity of the sample were followed. While Mr. Carroll was in the emergency room, it was crowded with intoxicated men who had been involved in a brawl at a fraternity party.
The urine sample collected at the time of Mr. Carroll’s accident tested positive for marijuana. As a result, he was terminated from his job as a police officer. It was Mr. Carroll’s contention that his urine sample *641 was inadvertently switched with the urine sample of another patient, most likely one of the intoxicated men in the emergency room at the same time that he was there. Therefore, Mr. Carroll claimed that he was wrongfully terminated from his job.
12Mr. Carroll appealed his termination to the Civil Service Commission. At the hearing before the commission, Mr. Carroll testified that he had never taken illegal drugs, that he had taught drug prevention courses, and that he was qualified as an expert in drug abuse. Mr. Carroll also testified that he was strongly opposed to the use of illegal drugs.
Among the evidence presented to the commission were the results of a second drug test conducted shortly after the first test. Three days after the first urine sample was obtained from Mr. Carroll, another sample of his urine was collected. This sample tested negative for drugs.
An expert witness for the City of New Orleans testified that it would have been scientifically impossible for the second urine sample to have tested negative for the presence of THC, the active ingredient in marijuana, if the first test had accurately reflected the level of THC in Mr. Carroll’s urine. Additionally, a blood sample was taken from Mr. Carroll the same day that the first urine sample was collected, and the blood tested negative for illegal drags. Finally, Mr. Carroll submitted to additional drug testing, including hair analysis, at his own expense, and all of the tests showed that there were no illegal drugs in his body.
In its original decision, the Civil Service Commission stated that “[w]e are disappointed that the Appointing Authority would terminate an employee and ruin his career without sufficient evidence to support its decision.” I also note that Mr. Carroll was terminated from his job after sufficient additional testing for illegal drugs had been completed to verify that he did not have drugs in his system at the time of the initial urine test.
Mr. Carroll should never have been terminated from his job. It is very unfortunate that Mr. Carroll has had to become involved in such contentious litigation in order to be reinstated with the police department. Although the amount of attorney’s fees awarded in this case may seem excessive, I believe that they are | ¡justified. Mr. Carroll was forced to retain counsel to protect his rights when the City of New Orleans seemed determined to deprive him of those rights in the face of clear and convincing evidence exonerating Mr. Carroll. Rather than simply reinstating Mr. Carroll in his position with the police department when it was clear that Mr. Carroll had not used illegal drugs, the City of New Orleans instead proceeded to engage in protracted litigation.